UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES F. SAIZ,<br><br>            Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>            Defendant. | CASE NO. ED CV 05-708 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.
## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging the decision by Defendant Social Security Administration ("Agency"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. He seeks and order reversing the ALJ's decision and remanding the case to the Agency for the awarding of benefits. Alternatively, he asks the Court to remand the case to the Agency for further proceedings. After reviewing the record and for the reasons discussed below, the Agency's decision is AFFIRMED and the case is DISMISSED.

## II.

## BACKGROUND

Plaintiff was born on April 7, 1981, and was 22 years old at the time of the first administrative hearing. (Administrative Record ("AR") 240.) He has a twelfth-grade education and has taken some college courses. (AR 240, 246.) Plaintiff has worked as a landscaper, sporting goods salesman, truck stop cashier, and auto detailer at an automobile body shop. (AR 110, 118-122.) He claims that he became disabled on June 1, 2001, due to mental illness. (AR 96, 228.)

A.  <u>History of Plaintiff's Disability and SSI Applications</u>

Plaintiff filed his application for DIB and SSI on August 27, 2002, alleging inability to work since June 1, 2001. (AR 96-98, 228-230.) Following denials of his claim at the initial and reconsideration levels, Plaintiff requested and was granted a hearing before an ALJ. (AR 41-44.)

B.  <u>The 2003 Hearing and the ALJ Decision</u>

On October 29, 2003, the ALJ held a hearing at which Plaintiff, represented by counsel, appeared and testified. (AR 233-271.) A medical expert and a vocational expert also testified. (AR 241, 254-266, 268-271.) By decision dated November 19, 2003, the ALJ found that Plaintiff was capable of performing moderately complex five-step tasks in an habituated and non-public setting. (AR 62-63.) The ALJ concluded that, although Plaintiff could no longer perform his past relevant work, there were a number of unskilled, entry level jobs in the economy that he could perform. (AR 63.) Accordingly, the ALJ determined that Plaintiff was not disabled at any time through the date of his decision. (AR 64.)

C.  <u>The Appeals Council Remand</u>

Plaintiff appealed the ALJ's decision. (AR 80-81.) On June 10, 2003, the Appeals Council vacated the ALJ's decision, finding that the ALJ had not evaluated all of the medical opinions and had not provided a rationale to support his conclusion that Plaintiff's testimony was only partially credible. (AR 82-85.) The Council directed the ALJ on remand to:

1.  give further consideration to the treating source opinions and explain the weight given to them;
2.  further evaluate Plaintiff's subjective complaints and third-party written statements, and provide rationale for accepting or rejecting them;
3.  if necessary, obtain additional evidence from treating sources; and
4.  if warranted by the expanded record, obtain additional evidence from a vocational expert.

(AR 84.)

D.  <u>The 2004 Hearing and the ALJ's Decision</u>

On December 14, 2004, the ALJ held a second hearing. (AR 278-291.) Plaintiff was represented by counsel and testified at the hearing. (AR 281-286.) In addition, a vocational expert testified. (AR 286-290.)

On February 9, 2005, the ALJ issued a decision analyzing Plaintiff's claims under the Agency's five-step evaluation process, ultimately concluding that Plaintiff was not disabled. (AR 10-20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 15.) At steps two and three, he found that Plaintiff exhibited substance

induced psychosis, personality disorder, NOS, with anti-social features, and drug and alcohol abuse reported to be in remission, but that these impairments did not meet or equal any of the Listings. (AR 15.) At step four, the ALJ found that Plaintiff was capable of simple, repetitive tasks in a non-public setting. (AR 15.) And, contrary to his finding in his first decision, he concluded that Plaintiff could return to his prior job as an auto-body detailer. (AR 18.) The ALJ also determined that there were other jobs in the economy that Plaintiff could do. (AR 18.) Plaintiff challenged the ALJ's decision, but the Appeals Council denied review. (AR 4-7, 77.) Plaintiff then filed suit in this Court.

## III.

## ANALYSIS

Plaintiff contends the ALJ erred when he (1) found that Plaintiff and his mother were not credible and, (2) rejected the opinion of Plaintiff's treating psychiatrist. (Joint Stipulation ("JS") at 4 and 10-11.) For the following reasons, the Court concludes that the ALJ did not err.

A.  <u>Standard of Review</u>

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). If the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Further, if the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

B.  <u>The ALJ Did Not Err In Finding Plaintiff And His Mother Were Not Fully Credible</u>

Plaintiff argues that the ALJ did not properly consider his subjective complaints and failed to provide sufficient reasons for rejecting his credibility as required by Social Security Ruling ("SSR") 96-7p.[1] (JS at 10-11.) Plaintiff also argues that the ALJ failed to properly assess the credibility of his mother, who had submitted a daily activities questionnaire. (JS at 13.) For the reasons set forth below, the Court concludes that the ALJ did not err.

---

[1] SSR 96-7p provides that the ALJ's assessment of the credibility of subjective pain statements must be based on a consideration of all of the evidence in the record, which includes, but is not limited to, medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions; statements and reports from the claimant and others; prior work record and efforts to work; daily activities; and observations about the individual.

1.  <u>Plaintiff's Subjective Complaints</u>

Plaintiff claims that he cannot work because he gets paranoid, sees things that are not there, and sometimes follows impulses to simply not go to work. (AR 136, 138.) Plaintiff contends that the ALJ did not consider his subjective complaints and failed to provide sufficient reasons for rejecting his credibility. (JS at 12-13.) For the following reasons, the Court disagrees.

The ALJ is responsible for determining credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The general rule is that, where a claimant produces some objective evidence of an impairment that could produce some symptoms, the ALJ can only reject the claimant's testimony concerning the severity of the symptoms by specifying clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). (This assumes, of course, that the ALJ has not found that the claimant is malingering. *Id.*) In making a credibility determination, the ALJ must consider all of the evidence in the record. *See* SSR 96-7p; *Smolen*, 80 F.3d at 1284.

The ALJ found that Plaintiff's testimony regarding his limitations was inconsistent with his conduct. This is an appropriate reason for rejecting a claimant's credibility. *See Reddick*, 157 F.3d at 722 (explaining inconsistencies in the level of activity and claimant's alleged limitations have a bearing on credibility). Plaintiff testified that he is able to go dancing with friends almost every Friday, go to church every week, visit his mother at work, and drive himself to pick up movies or video games. (AR 243-244, 247-249, 253-254, 286.) Thus, Plaintiff, apparently, is able to interact with strangers in these public settings, which contradicts his claim that he cannot interact with strangers in a work setting. Indeed, when the

1 medical expert queried Plaintiff on this very topic he offered no
2 explanation. (AR 247.)  The ALJ relied, in part, on this
3 contradiction to conclude that Plaintiff was not credible.  This was
4 proper.  *See Reddick*, 157 F.3d at 722.
5     The ALJ also appropriately noted that Plaintiff's daily
6 activities were inconsistent with what would be expected of an
7 individual with Plaintiff's claimed limitations.  This is a clear and
8 convincing reason for questioning a claimant's credibility.  *See*,
9 *e.g.*, *Light v. Social Security Administration*, 119 F.3d 789, 793 (9th
10 Cir. 1997)(as amended)(holding ALJ may disbelieve a claimant's alleged
11 limitations where the claimant's testimony regarding his daily
12 activities and the nature, effect, or severity of his symptoms are
13 inconsistent).  Plaintiff filled out and submitted a written
14 questionnaire detailing his daily activities.  There, he noted that he
15 is able to wash dishes, wash clothes, mop the floor, go shopping with
16 his mother, read religious materials (though not remember what he
17 reads), and take care of his personal grooming needs.  (AR 132-137.)
18 While these daily activities are insufficient to demonstrate that
19 Plaintiff is symptom-free, they do suggest that his impairments are
20 not so extensive as to render him, as Plaintiff claims, incapable of
21 performing the type of activities required in low-skilled, non-public
22 jobs, and the ALJ's consideration of them was proper.  *See Smolen*, 80
23 F.3d at 1284 (explaining that a claimant's daily activities are
24 relevant in determining the credibility of his alleged symptoms and
25 their severity).
26     Finally, the ALJ noted that the medical record contradicted the
27 extent of Plaintiff's alleged impairments.  This is a proper
28 consideration by an ALJ in determining credibility.  *See Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(stating medical evidence that contradicted claimant's assertion of severity of her symptoms properly considered as basis for finding claimant not credible); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)(upholding rejection of the plaintiff's claimed symptoms when medical records addressed the plaintiff's claim and found symptoms to be lacking).  Contrary to Plaintiff's assertion that his mental impairments are not adequately controlled by medication, the ALJ noted that treatment notes from Plaintiff's psychiatrists indicated that Plaintiff's symptoms were improving, controlled, or non-existent with medication.  (AR 16-17, 152, 171, 177, 211-214, 218-221.) Additionally, the examining psychiatrist and the medical expert concluded that Plaintiff's impairments were controllable by medication to a degree that would allow him to perform simple, repetitive, non-public jobs.  (AR 60, 195, 241, 256-258.)  The treatment notes and opinions from non-treating medical sources suggest that, when Plaintiff consistently takes his medication, his symptoms are controlled, which further undermines Plaintiff's credibility and indicates that he is capable of functioning at a level required for performing low skilled, non-public jobs.  *See Rollins*, 261 F.3d at 857.

    In sum, in rejecting Plaintiff's credibility, the ALJ cited specific, clear, and convincing reasons, which are supported by substantial evidence in the record.  For that reason, the ALJ's finding is affirmed.

2. <u>Plaintiff's Mother's Questionnaire Answers</u>

Plaintiff similarly argues that the ALJ failed to properly assess his mother's credibility and that remand is required to address her written testimony. (JS at 12-13.) This argument is rejected.

Testimony from a lay witness concerning "how an impairment affects [a claimant's] ability to work" may not be ignored without explanation. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). When presented with lay witness evidence regarding a claimant's symptoms, an ALJ is obligated to give reasons germane to the witness before discounting it, and cannot dismiss the testimony of a lay witness solely because he has found that the claimant's testimony was not credible. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Plaintiff's mother filled out and submitted a questionnaire, detailing what she believed Plaintiff was capable of doing. In sum, she believed that Plaintiff was severely limited. The ALJ found that the mother's questionnaire had limited probative value because it "added little to the claimant's own questionnaire." (AR 16.) The ALJ also determined that her views "appear to reflect a filial acceptance of [Plaintiff's] complaints and may be at least partially motivated by the desire to see the claimant obtain financial benefit." (AR 17.)

These, arguably, are legitimate reasons for rejecting the mother's testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)(upholding ALJ's finding that claimant's girlfriend was not credible due to fact that her close relationship with claimant may have influenced her testimony based on her desire to help him). Even if they are not, the Court finds that any error was harmless. The mother's questionnaire was in all respects merely duplicative and,

hence, cumulative of Plaintiff's. In fact, if you lay the two questionnaires down next to each other, they are practically identical. An ALJ's failure to state proper reasons for rejecting lay testimony constitutes harmless error when the testimony does little more than corroborate the Plaintiff's testimony. *See Orcutt v. Barnhart*, No. ED CV 04-889 PLA, 2005 WL 2387702, at *10 (C.D. Cal. Sept. 27, 2005)(citing 20 C.F.R. §§ 404.1513(d), 416.913(d) and S.S.R. 88-13). For these reasons, Plaintiff's argument here is rejected.

C.   <u>The ALJ Provided Specific And Legitimate Reasons For Rejecting The Opinion Of Plaintiff's Treating Psychiatrist, And Did Not Err By Overlooking The March 10, 2003 GAF Score</u>

Plaintiff contends that the ALJ erred by not properly considering a July 28, 2003 assessment from Dr. Brooks, one of Plaintiff's treating psychiatrists, and for failing to provide clear and convincing reasons for rejecting it. (JS at 4-6.) Plaintiff further argues that the ALJ ignored the opinion of "another mental health care provider," who assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 45.[2] (JS at 6.) For the reasons explained below, these claims are rejected.

The ALJ is tasked with resolving conflicts and ambiguities in the medical record. *Andrews*, 53 F.3d at 1039 (9th Cir. 1995). In doing

---

[2] The Global Assessment of Functioning or GAF scale reports a "clinician's judgment of the individual's overall level of functioning," which is used in "planning treatment and measuring its impact, and in predicting outcome." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (hereinafter "DSM-IV-TR"), p. 34 (4th ed. 2005). A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

so, he determines which medical opinions should be given the most weight in light of the general rule that, among the three types of physicians--(1) treating physicians, i.e., those who treat the Plaintiff; (2) examining physicians, i.e., those who examine but do not treat; and (3) non-examining physicians, i.e., those who neither examine nor treat--the most weight should be given to the opinion of a treating source. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating physician's opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be clear and convincing. *Id.*  When the opinion of a treating doctor is controverted, however, the ALJ may reject it so long as he provides specific and legitimate reasons for doing so, which are supported by substantial evidence in the record.  *Id.*; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

At the outset, the Court notes that Dr. Brook's July 28, 2003 assessment of Plaintiff as having "fair" to "poor" ability to perform work related activities is controverted.  Dr. Swati Thacker, another treating psychiatrist, indicated that Plaintiff showed only "mild" to "moderate" impairments and assigned him a GAF score of 68[3]--just six months after Plaintiff's alleged onset date.  (AR 148-50, 202-203, 170-177.)  Similarly, the Agency's consulting, examining psychiatrist, Dr. Gregg, assessed Plaintiff's residual functional capacity as "moderately limited" to "not significantly limited."  (AR 192-195.)  Finally, Dr. Brooks himself previously assessed Plaintiff as having a

---

[3] A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  (DSM-IV-TR at 34.)

GAF score of 60,[4] which more closely correlates with moderate to mild impairment.  Thus, the ALJ's findings will be given deference so long as they are based on specific and legitimate reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.

1. <u>Dr. Brooks's July 28, 2003 Assessment</u>

Plaintiff complains that the ALJ did not properly consider Dr. Brooks's opinion.  (JS at 4-6.)  Plaintiff's argument, essentially, is that Dr. Brooks's July 28, 2003 assessment--that Plaintiff was too impaired to maintain a job--should be given controlling weight.  (JS at 4-6.)  The Court disagrees.

A treating physician's opinion on the nature and severity of an impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 416.927(d)(2).  The treating physician rule, however, does not require the ALJ to accept a treating physician's opinion which is brief, conclusory, and unsubstantiated by objective medical evidence.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

Here, Dr. Brooks was one of four psychiatrists at the Barstow Counseling and Behavioral Health Center who treated Plaintiff between October 18, 2001, and November 8, 2004.[5]  (AR 151-177, 197-227.)  A

---

[4]  A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  (DSM-IV-TR at 34.)

[5]  Dr. Brooks was Plaintiff's treating psychiatrist from April 2003 to October 2003.  (AR 201-209, 227.)

12

fair reading of the medical records during the relevant time frame shows that, though Plaintiff reported bouts of periodic mood swings and auditory and visual hallucinations, his condition improved or remained stable when he took his medications as prescribed. (AR 171, 177, 211-214, 218, 219, 220-221.)

On July 28, 2003, Dr. Brooks completed a "Medical Assessment of Ability to Do Work-Related Activities" on Plaintiff's behalf. (AR 202-203.) In this assessment, Dr. Brooks opined that Plaintiff's ability to maintain attention and concentration, deal with work stresses, follow work rules, and interact with supervisors was poor. (AR 202.) Additionally, Dr. Brooks found that Plaintiff's ability to deal with the public, use his judgment, carry out complex job instructions, and make personal-social adjustments was fair. (AR 202-203.) Dr. Brooks also noted that Plaintiff lacked the ability to function independently, but concluded that he could manage social security benefits on his own. (AR 202-203.) Dr. Brooks's assessment, however, gave no indication whether Plaintiff's condition was permanent or temporary, or whether it would improve with regular medication use. (AR 202-203.)

The ALJ discounted Dr. Brooks's assessment for a variety of reasons. He noted that Dr. Brooks's 2003 assessment was inconsistent with subsequent medical evaluations by Dr. Brooks and other treating psychiatrists, who found that Plaintiff's condition had improved. He listed those inconsistencies, as follows:[6]

---

[6] While the ALJ did not include the names of the authors of each treatment note, this Court has included them.

1.  Dr. Brooks's October 23, 2003 notes, reporting that Plaintiff "was taking Paxil, Tegretol, and Risperdal with good response and no side effects," and that the medication helped to control his paranoid thoughts, delusions and controlled his mood swings. (AR 16, 227.)
2.  Dr. Arturo Tecson's January 7, 2004 note that Plaintiff was less depressed and had less hallucinations. (AR 16, 225.)
3.  A March 3, 2004, note by Dr. Tecson once again reporting that Plaintiff was less depressed, had fewer auditory hallucinations, and was feeling better. (AR 16, 223.)
4.  A March 31, 2004 note by Dr. Tecson that Plaintiff was feeling "alright" but had little motivation. (AR 16, 221.)
5.  Dr. Tecson's June 15, 2004, note that Plaintiff was "stable" and motivated to get a job. (AR 16, 220.)
6.  A September 27, 2004, note by Dr. Dennis Payne that Plaintiff was doing well, his medications were "effective," and his sleep was good. (AR 16, 217.)

Faced with competing views from different doctors, the ALJ properly relied on more recent medical evidence to support his conclusion that Plaintiff's medical record "reveal[ed] that [Plaintiff's] condition had improved and he was less depressed, less paranoid, and more stable." *See* 20 CFR 404.1527(c)(4); *see also Magallanes*, 881 F.2d at 751 (noting the ALJ may reject the conflicting opinion of a treating doctor by setting forth a detailed summary of the facts and the conflicting evidence, stating his interpretation of the evidence, and making findings); *see also Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ also properly relied on the opinions of the examining psychiatrist and the medical expert in discounting Dr. Brooks's assessment. *See Morgan*, 169 F.3d at 602 (noting that the ALJ's rejection of the opinion of a treating physician may be based in part on the testimony of a non-treating, non-examining medical advisor, when consistent with other independent evidence in the record). Both the examining psychiatrist and the medical expert concluded that Plaintiff's condition was controlled with medication and, therefore, Plaintiff should be able to perform simple, repetitive, non-public work. (AR 60, 241, 256-258.) Though the opinions of the examining psychiatrist and the medical expert do not, in general, carry the same weight as that of the treating doctor, their findings were consistent with other independent evidence in the record and, therefore, it was proper for the ALJ to rely on them. *See Morgan*, 169 F.3d at 602.

Finally, the ALJ was not required to credit Dr. Brooks's opinion, which was based on Plaintiff's subjective complaints, where, as here, the ALJ found Plaintiff not credible. *See Fair*, 885 F.2d at 604; *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)(affirming the ALJ's rejection of a treating physician's opinion when it was based on the claimant's self-reports, which the ALJ properly found not credible); and *Flaten v. Secretary of Heath & Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995)(holding that where a treating source's opinion of disability is "premised to a large extent upon the [Plaintiff]'s own accounts of his symptoms and limitations," it may be disregarded "when those complaints have been properly discounted."). For these reasons, Plaintiff's argument that the ALJ erred by not relying on the treating doctor's opinion is rejected.

2. <u>The March 10, 2003 GAF Assessment</u>

Plaintiff also complains that the ALJ "ignored" a March 10, 2003, GAF score from a "treating mental health provider," and failed to provide any reason for rejecting it. (JS 6.) A review of the record, however, establishes that the ALJ's failure to discuss this assessment does not amount to error.

On March 10, 2003, Deborah A. Miller, MLT, and Shana Adkison, MA, assessed Plaintiff's GAF at 45.[7] (AR 215.) It does not appear that either Miller or Adkinson are "acceptable medical sources."[8] *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources). Nor does the record show that they were working so closely with and under the direct supervision of a doctor or psychologist that their findings would be equal to an acceptable medical source. *Cf. Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)(holding opinion of a nurse practitioner could be viewed as an acceptable medical source where she acted so "closely under the supervision" of the treating physician her opinion should be "properly considered as part of the opinion" of the physician). Indeed, no other signatures appear on the four corners of this document. (AR 215.) At most, the Miller/Adkinson GAF assessment is nothing more than an opinion from an "other source" under the regulations. *See* 20 C.F.R. §§ 404.1513(d),

---

[7] A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." (DSM-IV-TR at 34.)

[8] Miller's title, "MLT," presumably refers to a licensed "Medical Laboratory Technician" under § 1260.3 of the California Business & Professions Code. Adkinson's title, "MA," presumably refers to a licenced "Medical Assistant" under § 2069 of the California Business & Professions Code.

16

416.913(d).  As a result, the ALJ was not required to consider or discuss it.  *See Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990), *rev'd en banc on other grounds*, 947 F.2d 341 (9th Cir. 1991).

The Court also notes that the Miller/Adkinson GAF score is contradicted by the scores of two treating psychiatrists, Dr. Brooks, who gave Plaintiff a GAF score of 60 on April 18, 2003, and Dr. Thacker, who gave Plaintiff a GAF score of 68 on November 2001.  (AR 177, 209.)  The ALJ properly deferred to the doctors' scores in assessing Plaintiff's condition.  *See Lester*, 81 F.3d at 830; *see also Jackson v. Barnhart*, 2005 WL 2008037, at *7 (holding that an ALJ permissibly afforded a nurse's opinion less weight than the contradictory opinion of an accepted medical source).

Finally, even assuming that the March 10, 2003 GAF score was assessed by a psychiatrist or that Miller and Adkinson were acting as the agent of one on that day, an ALJ need only explain why he rejected "significant probative evidence."  *See Vincent*, 739 F.2d at 1394 (explaining that an ALJ "need not discuss all evidence presented to her."); *Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  The Miller/Adkinson assessment is neither.  Because a GAF score by itself is not definitive proof of disability, a single GAF score, with no other supporting assessment from a physician, does not meet Plaintiff's burden of proving he is disabled.[9]  *See*, *e.g.*, *Purvis v. Commissioner of Social Sec. Admin.*, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999)(noting that there is no "Ninth Circuit authority[] that a GAF score of 50, by itself, requires a finding of disability");

---

[9]  The Miller/Adkinson assessment notably failed to discuss the severity of Plaintiff's symptoms and impairments, or any impact these had on his ability to function in a work setting.  (AR 215.)

*Alvarez v. Barnhart*, 2002 WL 31466411, at *8 (W.D. Tex. 2002) (discussing that an ALJ is not bound to consider the results of a GAF assessment at the exclusion of other medically reliable evidence). Thus, the Miller/Adkinson assessment is neither significant nor probative, and the ALJ did not err in failing to specifically address it.

IV.

CONCLUSION

For the reasons set forth above, the Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error. Therefore, the Court AFFIRMS the decision of the Agency and enters summary judgment in favor of the Agency and against Plaintiff.

DATED:    February 19 , 2007.

                                       /s/ Patrick J. Walsh
                                  PATRICK J. WALSH
                                  UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SAIZ, M 708\Memo Opinion_Ord.wpd